FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 JUN 29 AM 10: 25

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| VIRGINIA ANN WOOD, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV-96-BU-1058-S |
| ALABAMA POWER COMPANY, | ) | **ENTERED** |
| Defendant. | ) | JUN 29 1999 |

## MEMORANDUM OPINION

This case is presently pending before the Court on Motion for Summary Judgment filed by Defendant Alabama Power Company. (Doc. 24). Plaintiff Virginia Ann Wood sued her former employer, Alabama Power Company, alleging she was terminated on the basis of her age in violation of the Age Discrimination in Employment Act (hereinafter "ADEA). Based on this Court's review of the record and consideration of the arguments presented by the parties, this Court finds that there are no disputed issues of material fact and that Defendant Alabama Power Company is entitled to judgment as a matter of law. Therefore, Alabama Power's Motion for Summary Judgment is due to be granted for the reasons set forth below.

I.  SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an opportunity to test the mettle of their case before it reaches trial. On a motion for summary judgment, the court assesses all of

34

the proof the parties bring to bear in order to ascertain whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary judgment is appropriate only if the court concludes that no genuine issue of material fact exists <u>and</u> that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking a summary judgment has the initial responsibility of informing the court of the grounds for its motion and of specifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party's burden is not meager; it must illuminate for the court the reasons why the non-moving party cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Clark*, 929 F.2d at 608. The moving party's burden was set forth in *Clark* as follows:

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Only</u> when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party

bearing the burden of proof at trial will not be able to meet that burden. Even after *Celotex* it is *never* enough to simply state that the non-moving party cannot meet its burden at trial.

*Id.* (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54)(emphasis added).[1]

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33

---

[1] The Eleventh Circuit recognized that *Celotex* created "an exception to the *Adickes* [*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)] rule for [an] uncommon situation," i.e., "when neither party could prove either the affirmative or the negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608. In this "uncommon situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id.* at 607.

(1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The court, however, must not weigh conflicting evidence for probity or make credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. The court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993)(citations omitted). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## II. STATEMENT OF FACTS[2]

Alabama Power terminated Virginia Ann Wood in March 1995. (Doc. 26, p. 26) At the time of her termination, Ms. Wood was 54 years old and had worked for Alabama

---

[2] As required when determining a Motion for Summary Judgment, the Statement of Facts reflects the facts in the light most favorable to Ms. Wood, the non-moving party. All disputed facts are resolved in her favor and all reasonable inferences arising from those facts are drawn in her favor. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-89, 111 L. Ed. 2d 695 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

Power for 15 years. (*Id.* at 7, 26) Ms. Wood was a senior secretary in the Transmission Line Department of the Power Delivery Department when she was terminated. (*Id.* at 95, 160-61)

In her Complaint, Ms. Wood alleges that she was terminated on the basis of her age in violation of the ADEA.[3] (Doc. 6 ¶ 10) Ms. Wood also complains about her transfer from the Substation Department to the Lines Department; however, in the Pretrial Order, Ms. Wood does not assert that the transfer itself was discriminatory; she asserts only that it was a pretext for her termination. (Doc. 12, p. 20). In her Position Statement, as set forth in the Pretrial Order, Ms. Wood sets forth the following:

> Plaintiff alleges disparate treatment in violation of the Age Discrimination in Employment Act. She alleges that her transfer into her new position was merely a pretext. Defendant knew that Plaintiff did not possess the skills needed for the new assignment and placed Plaintiff in the position with the intent to terminate her because of her age and close proximity to her eligibility to receive early retirement.

*Id.* Alabama Power contends that it terminated Ms. Wood for insubordination and it denies that it transferred her as a pretext, or a set-up, to terminate her on the basis of her age.

Prior to October 1994, Ms. Wood worked in the Transmission Substation Department of the Power Delivery Department as senior secretary to Dave Bryan. Alabama Power determined that the Transmission Substation was over-staffed and that cuts would need to be made. In October 1994, Martha Russell, secretary to William Dow

---

[3]The ADEA prohibits employment discrimination on the basis of age against individuals over the age of 40. 29 U.S.C. §§ 623(a)(1), 631(a).

in the Transmission Line Department, transferred to another position. Bryan contacted Mr. Dow and asked Mr. Dow if he would be interested in replacing Ms. Russell with a secretary from the Transmission Substation Department. Mr. Dow selected Ms. Wood to replace his secretary because Ms. Wood had done excellent work for him before and because he believed that she was "very capable" of performing the duties of secretary in the Transmission Line Department. Ms. Wood was not asked whether she wished to be transferred to the Transmission Line Department. Ms. Wood was transferred to the transmission Line Department and her position in the Transmission Substation Department was eliminated.

Prior to Ms. Wood's transfer, there were four secretaries in the Transmission Substation Department: Ms. Wood, who was 53 years old at the time of her transfer, Betty Murphree, who was 68 years old, Joyce Silver, who was approximately 54 years old, and Gail Bradford, who was 32 years old.

When told she was to be transferred, Ms. Wood expressed trepidation about the transfer. She told Mr. Dow that she could not perform the duties related to using certain computer software. Mr. Dow told her that he believed she could do the duties and that he would provide training and any personal assistance needed. He also told her that everyone in the Transmission Line Department was available to help her, including Ms. Russell, the former secretary.

Alabama Power did provide Ms. Wood with computer training and Mr. Dow even attended some classes with her. Mr. Dow testified that he believed that Ms. Wood was capable of performing the duties and that this belief was demonstrated by her performance

in the computer classes. However, Ms. Wood continued to tell Mr. Dow that she could not perform the computer duties required for the position and asked Mr. Dow to help her find another position. Mr. Dow talked with Human Resources, but there was no other, equivalent position available for Ms. Wood. Nevertheless, Mr. Dow continued to tell Ms. Wood that she was capable of doing the job. Ms. Wood continued to tell Mr. Dow she could not do the job and did not want to do the job or to work with Mr. Dow.

In February 1995, Mr. Dow evaluated Ms. Wood's job performance in the Transmission Line Department. (Doc. 26, Exh.7). In the section of the evaluation for the supervisor's comments, Mr. Dow wrote, "Ann has performed at a level that is below expectations since her transfer to P.D.–Transmission Lines. Ann should strive to improve her computer skills and increase her willingness to accept responsibility to improve her performance." (*Id.*) These issues, a below-standard performance of the computer-related duties and a lack of willingness to learn those necessary computer skills, were echoed throughout the evaluation.[4] (*Id.*) Darrell Piatta, higher-level supervisor, reviewed the

---

[4]For example, in the "Individual Achievements/Contributions" section, Mr. Dow noted:

> Ann's lack of personal computer skills has severely reduced her ability to contribute to the overall success of PD-Transmission Lines. Her hesitancy to assume responsibility for specific department functions has created more work for departmental supervision. Ann is adequate in areas such as phone answering and routine typing, but modern office operation requires additional skills and the desire and willingness to accept additional responsibilities. Ann's performance is below expected levels, but can be improved with skill building and the personal acceptance of responsibility for required duties.

(Doc. 26, Exh. 7)

Page 7 of 18

evaluation and attached these comments:

> In moving Ms. Wood to the Transmission Line Department, she should note that we are making a strong commitment to provide her all of the needed computer training to develop those skills required as a Senior Secretary in the Transmission Line Department. Additionally, I would remind Ms. Wood that this will require a strong commitment from her to learn and develop these skills with a "can do" attitude that is oriented toward excellent customer service.
>
> DGP
> 3/2/95

(*Id.*)

Ms. Wood continued to insist that she could not perform her job responsibilities related to the computer. On March 17, 1995, Mr. Dow gave her a written warning for, "Failure to follow instructions, unprofessional conduct unbecoming an employee of Alabama Power Co., and conduct that reduces the efficiency of Power Delivery-Transmission Lines.

Early each year, employees of Alabama Power and their supervisors prepare a Performance Plan Summary (PPS), detailing the performance goals and expectations for the coming year. Ms. Wood and Mr. Dow worked on her PPS. Mr. Dow told Ms. Wood to include certain items as "P.D. Transmission Lines Secretarial Responsibilities." Ms. Wood typed on her PPS, "Attached per Bill Dow's instructions are two pages entitled "P.D. Transmission Lines Secretarial Responsibilities" that he typed and wanted me to add to this performance plan." She gave this PPS to Mr. Dow to review and he returned the PPS with instructions to change certain items and remove her comments, which he deemed inappropriate. Instead of removing the comments, Ms. Wood added the following comment

to the "Individual/Team Goals (Whats)" section, "Bill Dow asked me to change Items 1-5 from what I presented to him on 3/14/95 to the items 1-5 as shown below on 3/15/95." Again, Ms. Wood gave the PPS to Mr. Dow, who returned the PPS to Ms. Wood with instructions for her to delete the comments.

Ms. Wood deleted the comment regarding the change in items 1-5, but she added the following to that section, "I told Bill Dow that I cannot learn the PC/Software packages. He was told this when they sent me over to this department. It makes me very nervous and upsets me for him to continually stay after me about computer software & pc work." Ms. Wood also deleted the comment regarding the attached list of responsibilities, but she added the following, "This Performance Plan and Summary was re-typed for the third time on 3/16/95. Bill Dow ask[ed] me to re-type it and change all of the first 4 sections to read exactly like the Interoffice Memo he sent me on 3/7/95(Attached). The first 2 times were changes of his also." And, as she had done before, Ms. Wood gave the PPS to Mr. Dow to review and, again, he returned it to her with instructions that she delete the comments.

On this fourth revision, Ms. Wood removed her comment from the Goals section and added the following to the Behaviors section:

> I told Bill Dow that I could not learn the PC/software packages. He was told this when I was sent to this depart[ment].
>
> This Performance Plan and Summary was re-typed for the 4th time on 3/20/95. Bill Dow ask[ed] me to re-type it and change everything except for major Strengths and Skills. Interoffice Memo he sent me on 3/7/95 (Attached). The first 3 times were changes of his also. All 51 Items dated 3/20/95 (Attached).

The Court notes that Mr. Dow told Ms. Wood to include goals and responsibilities related

to performing the computer work required of the position. Ms. Wood's version of the PPS did not include these specific goals and duties.

Ms. Wood gave the fourth version of her PPS to Mr. Dow. Ms. Wood told Mr. Dow that she would not take the comments off the PPS. She testified in her deposition that she did not remove the comments because:

> I told him I could not do the computer work and everything on there and [Mr. Dow] wanted me to say that I can do it and that I will do it and I can't because I know my limitations and capabilities. . . . I wasn't going to put down on there, yes, I can do it when I couldn't.

(Doc. 26, p. 154). She testified that she did not remove her comments from the PPS because that was her "rebuttal to [Mr. Dow] and that was my choice to put my comments on there."

Because Ms. Wood did not remove her comments from the PPS, Mr. Dow gave her a written reprimand, and suspended her for two days with pay, for "insubordination and continued failure to follow instructions." He told Ms. Wood that she should consider her job while she was suspended and, when she returned, be prepared to remove her comments from the PPS and be willing to perform the computer duties required of her position.

When she returned to work, she met with Mr. Dow and a representative from Human Resources. Mr. Dow asked her if she had changed the PPS as he had instructed her and, when Ms. Wood told him she had not changed the PPS, he said that he had no choice but to terminate her. Ms. Wood told Mr. Dow that she was not making any other comment and handed him a letter requesting a severance package. The letter stated, "Due to the fact that my job was eliminated in Power Delivery-Transmission Substations

I would like to take early retirement according to the Southern Company Severance Package. I also would like to be put on administrative leave to age 55." (Doc. 28, Exh. 3) Ms. Wood was terminated for insubordination and failure to follow instructions.

The day after she was terminated, Ms. Wood met with Robin Hurst, Vice President of Power Delivery. She asked Mr. Hurst for a severance package on the basis of the elimination of her job in Transmission Substations Department. According to Alabama Power's policy, Ms. Wood did not qualify for a severance package because she was qualified for the position with Mr. Dow that was not eliminated, she did not meet the age requirement, and she was terminated for failure to perform.

Mr. Dow hired Ms. Bradford, who is substantially younger than Ms. Wood, to replace Ms. Wood in the Transmission Line Department. He did ask all three secretaries in the Transmission Line Department if they were interested in the position. All three women had equivalent skill and Ms. Bradford was chosen for the position because she was the "most energetic" about the job and the potential to learn new skills.

III. DISCUSSION

In her deposition, Ms. Wood testified that she believed she had been discriminated against on the basis of her age as follows:

> I could not do the job [in the Transmission Lines Department] and that denied me a severance package or either early retirement because I didn't have but about another year. . . .
>
> . . . [T]hey knew that all this downsizing and everything was going on in power delivery. I had a job. I could have stayed in mine just like other did until – . . . they announced retirement about two or three months after I left.

That knocked me out of getting my retirement.

(Doc. 26, pp.130-31) However, she also testified that this case is <u>only</u> about her termination and nothing else. (*Id.* at 68-69) The Pretrial Order supports the holding that this case is limited to Ms. Wood's claim that she was terminated on the basis of her age. However, because Ms. Wood is proceeding pro se,[5] this Court will discuss whether the evidence supports an ADEA claim based on discriminatory termination or transfer.

This case is governed by the well-established *McDonnell-Douglas* framework for ordering proof in a circumstantial evidence case alleging employment discrimination. *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 656 (11th Cir. 1998)(citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S. Ct. 1307, 1310 134 L. Ed. 2d 433 (1996); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998)).

> Under this framework, the plaintiff must establish a prima facie case of discrimination. The establishment of a prima facie case creates a presumption of discrimination. The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption. If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual.

*Standard v. A.B.E.L. Services*, 161 F.3d 1318, 1331 (11th Cir. 1998)(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973)); *see Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999).

A. <u>TERMINATION</u>

---

[5]The Court notes that Ms. Wood was represented throughout the discovery stage and at the pretrial conference.

To establish a prima facie case of age discrimination, "the plaintiff generally must show that: (1) she is a member of the protected group; (2) adverse employment action was taken against her; [and] (3) she was replaced by a person outside the protected group." *Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1519 (11th Cir. 1990)(citations omitted). The parties do not dispute that Ms. Wood can establish a prima facie case of age discrimination as to her termination claim.

Because the parties assume that Ms. Wood can establish a prima facie case of age discrimination, the burden shifts to Alabama Power to articulate a legitimate, nondiscriminatory reason for terminating Ms. Wood. Alabama Power asserts that it terminated Ms. Wood for insubordination and refusal to follow instructions. The Court finds that Alabama Power's articulated reason is sufficient to shift the burden back to Ms. Wood to discredit this reason.

The United States Court of Appeals for the Eleventh Circuit has held:

> When deciding a motion by the defendant for judgment as a matter of law in a discrimination case in which the defendant has proffered nondiscriminatory reasons for its actions, the district court's task is a highly focused one. The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct."

*Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).

There are three basic ways a plaintiff may establish that her employer's proffered reasons are pretextual. "[A] plaintiff may discredit the employer's proffered legitimate

Page 13 of 18

reasons by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, and (3) that they were insufficient to motivate the employment decision." *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1564 (11th Cir. 1995)(Johnson, J., concurring).

It is simply not disputed that Ms. Wood was terminated because she was insubordinate and refused to perform the job of Mr. Dow's secretary. Mr. Dow appears to have given Ms. Wood innumerable opportunities to adjust to her new position. It appears undisputed that Ms. Wood would not have been fired if she had simply indicated that she was willing to try to do the job. Ms. Wood refused and asked for severance pay. Ms. Wood's termination was clearly and unequivocally the result of her repeated and obdurate refusal to do the job.

### B. TRANSFER

Alabama Power is entitled to a summary judgment as to Ms. Wood's claim she was discriminatorily transferred on the basis that such claim was waived when it was not included in the Pretrial Order. *See* Fed. R. Civ. P. 16(e); *Ramada Development Co. v. Rauch*, 644 F.2d 1097, 1111 (5th Cir. Unit B May 1981)("failure to indicate in the pretrial order that an issue remains for trial ordinarily precludes proof on such issue to the detriment of the party who bears the burden of proof" (citing *Pacific Indemnity v. Broward County*, 465 F.2d 99, 103-04 (5th Cir. 1972)). However, even if this Court were to consider this claim before it, the transfer in this case is not an adverse employment action for purposes of the ADEA, and, thus, Ms. Wood cannot establish a prima facie case of age

discrimination with regard to her transfer.[6] Alabama Power is entitled to a summary judgment on the merits of any claims that the transfer from Transmission Substation to Transmission Lines was discriminatory.

Ms. Wood contends that she was transferred to another position that she was not capable of performing and without her consent. She argues that this action was "mean" and discriminatory. However, the record contains no evidence that the transfer was an adverse employment action, as defined in this Circuit.

The fact that Ms. Wood was required to learn additional skills as a result of the transfer, skills she felt she was incapable of mastering but which Mr. Dow believed she could learn, does not make the transfer "adverse" for purposes of the ADEA. The Eleventh Circuit Court of Appeals has held, specifically, that the requirement of additional training or learning does not make a lateral transfer an adverse employment action:

> [A plaintiff] needs only to show that [her] transfer was, on the whole, objectively adverse. Any adversity must be material; it is not enough that a transfer imposes some de minimis inconvenience or alteration of responsibilities. Moreover the fact that an employee must learn as a result of a transfer does not mean that the transfer is per se adverse. See Williams, 85 F.3d at 274. In Williams, for example, the court held that a salesman's transfer to a different product line was not adverse, despite the fact that he had to learn more new products than he would have if he had stayed put. See id. (concluding that the salesman's loss of commission income while he learned about new products did not render his transfer adverse). As the Williams court observed, all transfers require some learning, since they require employees to work with new people or products and to assume new responsibilities. See id. Thus, any coursework requirements for [the plaintiff] must rise to a level that a reasonable person would deem materially adverse, taking into account both the pros and cons

---

[6] See Baker, 903 F.2d at 1519 (Plaintiff must establish, inter alia, that an "adverse employment action" was taken against her in order to establish a claim of discrimination).

of such required education.

Doe v. DeKalb County School District, 145 F.3d 1411, 1453 (11th Cir. 1998).

Moreover, Ms. Wood's "subjective preference" for a particular job or position is irrelevant. See Id. at 1454 ("If a reasonable person in [the plaintiff's] position would have viewed the transfer as non-adverse, the district court should not consider [the plaintiff's] subjective, personal preference for [her] prior position.").[7] Ms. Wood has not presented evidence that a reasonable person, with the additional training and support of Mr. Dow, would have found the transfer to the Transmission-Lines Department to be an adverse employment action. Therefore, Ms. Wood does not have a claim for discriminatory transfer.[8]

In sum, Ms. Wood was terminated because she refused to do the job to which she had been transferred involuntarily. Ms. Wood obviously believes Alabama Power's actions were mean and/or unfair. However –

> [The ADEA] is not a shield against harsh treatment at the workplace. . . . Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is

---

[7] In describing the type of transfer that would be considered "adverse," the Doe court noted that its "reasonable person standard will continue to protect . . . employees from transfers that are a form of demotion [i.e, that result in lesser pay, responsibilities and/or prestige] or that disrupt investment in education, training, or seniority." Doe v. DeKalb County School Board, 145 F.3d at 1452 & n. 19.

[8] The evidence, which is undisputed, shows that Ms. Wood was transferred to the Transmission-Lines Department because Mr. Dow selected her based on her superior skills as a senior secretary.

simply whether the given reason was a pretext for illegal discrimination.

Nix at 1187.

This Court does not sit in judgment of the wisdom of an employer's business decisions; it examines the record to determine whether there exists such evidence that a reasonable jury could find that Ms. Wood was terminated because of her age. Although Mr. Dow may have erred in predicting Ms. Wood's willingness and ability to learn the computer programs required for the secretary position in the Transmission-Lines Department and in demanding a fifteen-year employee, with an exemplary work history, to transfer into a position that she adamantly insisted she was incapable of ever mastering, these lapses in good business judgment would not support a jury verdict that he had terminated Ms. Wood and/or transferred her because she was over 50 years old. Indeed, the Court notes that the tired stereotype that older employees are resistant to change and incapable of learning new skills describes Ms. Wood,[9] but this stereotype is not reflected in the attitudes or actions of her employer.

---

[9]The Seventh Circuit Court of Appeals wrote:

> There was evidence that the program [to eliminate a classification of jobs] was motivated by a concern that the branch managers were not "flexible" or "energetic," and the plaintiffs call these code words for "over 40," but it is a considerable insult to the tens of millions of workers in that age group to suppose that they are generally regarded as lacking in flexibility and energy. . . . A maxim like "you can't teach an old dog new tricks" is objectionable as a form of stereotyping; it treats all "old dogs" alike.

Blackwell v. Cole Taylor Bank, 152 F.3d 666, 671-72 (7th Cir. 1998).

IV. **CONCLUSION**

For the reasons set forth above, the Court finds that there are no disputed issues of material fact and that Summary Judgment in favor of Alabama Power is due to be granted as a matter of law. The Court will enter an Order contemporaneously herewith in accordance with this Memorandum of Opinion.

DONE this **28th** day of June, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE